**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**CLIFFORD McMAUGH,**

    Plaintiff,

v.

**LANCO TRUCKING, INC., LANGDALE FOREST PRODUCTS CO., and JERALD STROUD**,

    Defendants.

Civil Action No. 7:13-CV-125 (HL)

**ORDER**

Before the Court is the Motion for Summary Judgment (Doc. 21) by Defendants Lanco Trucking, Inc., Langdale Forest Products Company, and Jerald Stroud (collectively "Defendants"). For the reasons stated below, this motion is granted.

**I.  Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## II.  Factual Summary

This case arises from the July 5, 2012 decision by Lanco Trucking, Inc. ("Lanco") to terminate the employment of Plaintiff Clifford McMaugh ("Plaintiff"). Lanco is a subsidiary of Langdale Forest Products Company ("Langdale Forest Products"). First hired in 2008, Plaintiff initially drove a truck filled with wood chips for Lanco, but, by July 2012, he had switched to driving dump trucks. His supervisors were Chris Parker ("Parker") and Joe Singley ("Singley"). Parker is a superintendent at Lanco and is supervised by Singley, who is a general manager. Jim Hickman ("Hickman"), the technical director at Lanco, is the superior of both Parker and Singley. Plaintiff, Parker, Singley, and Hickman are all white males. (Defendants' Statement of Material Facts ("DSMF"), Doc. 23, ¶¶1-7, 10, 34; Deposition of Barbara Barrett, Doc. 37-6, p. 9; Deposition of Joseph Singley, Doc. 29, pp. 14-15).

Plaintiff accepted a position as a dump truck driver because he thought there was "nonsense going on" among the drivers of the wood chip trucks and he "wanted to be away from certain people." Black and white employees, including Plaintiff, believed that a black driver named Jerald Stroud ("Stroud") was receiving preferential treatment. Among other things, Stroud did not do his work,

slept on the job, and worked a second job after his Lanco shift, which violated company policy. Among other reasons, Plaintiff believed that Parker showed favoritism to Stroud because they grew up together, Stroud's father was a police officer, Stroud knew that Parker used illegal drugs, and Parker owed Stroud money for drugs. (DSMF, ¶¶12-15, 17-18; Deposition of Plaintiff, Doc. 25, pp. 120-23).

During their time at Lanco, Stroud called Plaintiff a "cracker" on two occasions prior to the incident leading to Plaintiff's termination. The first time Stroud used this slur with regard to Plaintiff was in 2011, and afterwards Plaintiff complained about Stroud's behavior to Joe Singley. The supervisor told Plaintiff that if he disciplined black employees then he would be sued by the National Association for the Advancement of Colored People ("NAACP") and that a black employee had just threatened to file a discrimination lawsuit. Singley said that he did not need "a bunch of niggers" causing problems and that Plaintiff should ignore Stroud and do his work. Stroud also called Plaintiff a "cracker" in early 2012. When Plaintiff complained to Jim Hickman, the supervisor ordered him to get his "ass in the truck and get on the road or hit the clock." Shortly before July 5, 2012, Lanco reduced Plaintiff's work hours. (DSMF, ¶¶42-44; Plaintiff's Response to DSMF, Doc. 32, ¶¶47-50).

4

In the afternoon of July 5, 2012, Plaintiff and Stroud became involved in an altercation at work after Plaintiff's work shift ended. Plaintiff, Stroud, and at least one other employee, Anthony Evans ("Evans"), were in the employees' break room when the incident occurred. Having heard that Plaintiff resented how Lanco's management treated Stroud, Stroud walked up to Plaintiff and said "you been running your fucking mouth about me." Stroud began shoving Plaintiff, at one point also grabbing his wrists, and said, "I'll fuck you up, cracker." As another employee came into the break room, Stroud shoved Plaintiff through the open door, and they carried their argument outside. It was at this point that Joe Singley heard their quarreling as he walked over from Lanco's scale house. He got in between Stroud and Plaintiff and tried to calm them. Singley told Stroud and Evans, who had also come outside, to go to his office and wait for him. Stroud did as he had been instructed. (DSMF, ¶¶19-24; Plaintiff's Response to DSMF, ¶¶51-54; Plaintiff's Depo., pp. 150-53, 166-68, 174-77; Deposition of Anthony Evans, Doc. 37-9, pp. 20-21).

Plaintiff turned to Singley and said, "You need to do your job … because you don't do your job." Singley felt that Plaintiff was irate, would not calm down, and would not listen to him. Before leaving work on July 5, Plaintiff asked Singley if he were fired, and the supervisor reassured him that he was not, but that he should go home. Plaintiff then told Singley that he would be speaking with the

Equal Employment Opportunity Commission ("EEOC") and Wesley Langdale, an individual in Lanco's upper management. Singley called Jim Hickman to discuss the altercation between Plaintiff and Stroud. Singley told his superior that Plaintiff had acted irrationally and was insubordinate. (Plaintiff's Response to DSMF, ¶56; DMSF, ¶¶24-27; Plaintiff Depo., pp. 101-02).

Hickman proceeded to investigate the incident. He spoke with Stroud and Evans. Stroud said that when he approached Plaintiff to ask if the other employee had a problem with him, Plaintiff began yelling and threatened to "mess you up." Both Stroud and Evans indicated that after Singley broke up the tussling employees, Plaintiff told his supervisor he should do his job and that if he did not, then Plaintiff would speak with Wesley Langdale. After asking Singley, Stroud, and Evans to provide written statements about the incident, Hickman determined that Plaintiff had been the aggressor in his argument with Stroud and that he had been insubordinate. On July 5, 2012, Hickman and Singley decided to terminate Plaintiff's employment. (DSMF, ¶¶28-30, 32-34; Statements of Jerald Stroud and Anthony Evans, Ex. 1 to Declaration of Jim Hickman, Doc. 30).

After leaving work, Plaintiff refused to let matters rest. That same day he filed a police report against Stroud. He also returned to Lanco and attempted to speak with Hickman, but the supervisor told him to return at 8 o'clock the next morning, July 6. When Plaintiff returned the next day, Hickman cursed at him,

chiding him for not being there at 8:00. Hickman also used a slur in reference to another Lanco employee, E. R. Williams ("Williams"), a black male. Referring to Williams, Hickman said that "your boy's ass will be going out the gate with you…." Plaintiff replied that "the next one you'll hear from is an EEOC lawyer…. I'm bringing charges against Langdale." Then he left. (DSMF, ¶¶35-37).

On September 17, 2013, Plaintiff filed suit in this Court against Lanco, Langdale Forest Products, and Jerald Stroud. Plaintiff alleges that Lanco and Langdale Forest Products violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, by engaging in race discrimination and retaliating against him for reporting the discrimination.[1] According to Plaintiff, these Defendants permitted a racially hostile work environment to exist by failing to punish Stroud for repeatedly using racial slurs against Plaintiff despite his complaining of them. Lanco and Langdale Forest Products also allegedly discriminated against Plaintiff by firing him but not Stroud after their confrontation on July 5, 2012. Plaintiff maintains that the termination was also in retaliation for his complaints of discrimination. Finally, Plaintiff has sued Stroud for battery, for which he alleges Lanco and Langdale Forest Products are also liable as Stroud's employers. (Complaint, Doc. 1, ¶¶3-40).

---

[1] The poorly-drafted Complaint also appeared to state Title VII claims against Stroud, but these claims have been dismissed. (January 15, 2014 Order, Doc. 19).

**III.   Legal Analysis**

Because the undisputed facts show that Defendants are entitled to judgment as a matter of law on all of Plaintiff's claims, summary judgment is granted.

**A.   Battery Claim and Stroud's Status as a Party**

Because Plaintiff is no longer pursuing his battery claim,[2] summary judgment is granted on this issue. Given that that was the only remaining claim against Stroud, he is dismissed from this lawsuit.

**B.   Race Discrimination Claim**

Summary judgment is also granted with regard to the race discrimination claim. Although Plaintiff's complaint only sets out a single, broad count of race discrimination, the allegations in the paragraphs supporting this count lead the Court to believe that Plaintiff intended to set forth both a disparate treatment and a hostile work environment theory.[3] The Court reaches this conclusion despite the fact that the parties' briefs in support of or in opposition to summary judgment

---

[2] See Plaintiff's Response to Defendants' Motion for Summary Judgment, Doc. 31, p. 10, n. 1.

[3] For example, paragraph eighteen states that "Plaintiff has been the victim of discrimination on the basis of his race in that he was treated differently than similarly situated non-white employees and has been subject to hostility and poor treatment on the basis … of his race." In a similar vein, paragraph nineteen alleges that "Defendants knowingly condoned and ratified the differential treatment of Plaintiff … because [they] allowed the differential treatment and participated in same. Defendants' known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment…."

do not address whether Plaintiff endured a hostile work environment at Lanco because of his race. Nevertheless, neither theory provides Plaintiff with sufficient ammunition to withstand summary judgment on the discrimination claim.

### 1. Hostile Work Environment

Plaintiff has not shown that he experienced race discrimination in the form of a hostile work environment at Lanco. Establishing a *prima facie* case of a race-based hostile work environment requires the plaintiff to show (1) that he belongs to a protected classification; (2) that he experienced unwelcome harassment; (3) that the harassment was based on a protected characteristic, such as race; (4) "that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) that the employer may be held liable for the harassment. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002); see also Manley v. DeKalb Cnty., Ga., 587 F. App'x 507, ___ (11th Cir. 2014) (citing Miller and listing race as a protected characteristic). Plaintiff's theory fails because he has not provided evidence that the harassment he experienced was severe or pervasive enough to alter to alter his working conditions at Lanco.

There is both an objective and a subjective component to this fourth element, whether the harassing conduct was so severe or pervasive as to alter the terms and conditions of employment. Miller, 277 F.3d at 1276. Courts should

weigh a number of factors when examining the objective severity of the conduct, including how often the conduct occurred, how severe it was, whether it was physically threatening or humiliating or only an offensive utterance, and whether it unreasonably interfered with the employee's work performance. Id. The "mere utterance of an … epithet which engenders offensive feelings in an employee" is usually not sufficient to create a hostile work environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Racial slurs must "be so 'commonplace, overt and denigrating that they create[] an atmosphere charged with racial hostility.'" Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1521 (11th Cir. 1995) (quoting E.E.O.C. v. Beverage Canners, Inc., 897 F.2d 1067, 1068 (11th Cir. 1990)). Enduring such slurs on three occasions over a two-month span, or even less, does not rise to the level of a Title VII violation. See e.g., Buckhannon v. Huff & Assocs. Const. Co., Inc., 506 F. Supp. 2d 958, 966 (M.D. Ala. 2007) (citing cases).

Although Plaintiff has pointed to some evidence that he experienced race-based harassment while he was at Lanco, the harassment was not, objectively speaking, sufficient to alter the terms and conditions of his employment. Plaintiff's evidence of such harassment consists of the three occasions in the last year he was at Lanco when Stroud referred to him as a "cracker." However, Plaintiff worked at Lanco for approximately four years, and there is no evidence that he

was ever physically threatened or humiliated because of his race.[4] Viewed objectively, whatever harassment he experienced should not have altered the terms and conditions of his work environment. The Court, therefore, concludes as a matter of law that Plaintiff did not experience a hostile work environment.

### 2. Disparate Treatment

Plaintiff is no more successful in arguing that he was racially discriminated against by being treated differently than a similarly situated, non-white employee. If there is no direct evidence of discrimination, and none of the parties contend there is in this case, then a Title VII claim is subject to the framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). McCann v. Tillman, 526 F.3d 1370, 1373 (2008). A plaintiff must first make out a *prima facie* case of discrimination. Id. Thus, Plaintiff must show (1) that he is a member of a protected class; (2) that he was subjected to an adverse employment action; (3) that Lanco[5] treated similarly situated or nearly identical non-white employees more favorably; and (4) that he was qualified to do his job. Id. at 1373. If he is able to do so, Lanco must come

---

[4] While Stroud's physical aggression toward Plaintiff on July 5, 2012, and threat to "fuck [Plaintiff] up" could certainly be perceived as physically threatening, Stroud was not targeting Plaintiff because Plaintiff is white but because he thought Plaintiff had been speaking falsely about him.
[5] The record is clear that Plaintiff worked for Lanco, not Langdale Forest Products. (DSMF, ¶1).

11

forward with a legitimate, nondiscriminatory reason for its action. Id. If this is done, Plaintiff "must then prove that the [employer's] reasons are a pretext for unlawful discrimination." Id.

Plaintiff has not established a *prima facie* case of discrimination because he has not pointed to another employee who, apart from race, is nearly identical and received better treatment from Lanco. Plaintiff insists that Stroud was similarly situated to himself, but he is mistaken.[6] After the altercation with Plaintiff, Stroud followed Singley's instructions to go to the office. Plaintiff, on the other hand, told Singley, "You need to do your job … because you don't do your job." He then threatened to complain to Wesley Langdale. In light of the fact that Lanco ultimately fired Plaintiff at least in part because of insubordination, this behavior means Plaintiff was not similarly situated to Stroud. There is no comparator to support Plaintiff's theory of disparate treatment.[7]

Even assuming *ad arguendo* that Plaintiff had made out a *prima facie* case of discrimination, summary judgment must still be granted on this claim because

---

[6] Plaintiff makes passing reference in his affidavit to a black employee named "Andre" who only received a three-day suspension after being aggressive and insubordinate to Singley. (Affidavit of Plaintiff, Doc. 33-1, ¶9). Too little is known about this incident for Andre to serve as a comparator to Plaintiff, but even if Andre could, Plaintiff would still not have shown how Defendants' proffered reasons for firing him were really pretexts for discrimination, as discussed below.

[7] Plaintiff insists that Title VII allows him to prove discrimination through circumstantial evidence even if he lacks a comparator. While this is a correct statement of the law, Plaintiff has not actually introduced circumstantial evidence that would prove he is the victim of race discrimination. See Turner v. Fla. Prepaid Coll. Bd., 522 F. App'x 829, 833 (11th Cir. 2013).

he has not cast doubt on Defendants' proffered reasons for his termination. According to Defendants, Plaintiff was fired because he was insubordinate and initiated the altercation with Stroud. There is some evidence in the record to suggest Plaintiff behaved in this manner, and these would certainly be legitimate, nondiscriminatory reasons for dismissing him. See Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).

The burden now shifts to Plaintiff to bring forward evidence that Defendants' proffered reasons for firing him were pretexts for discrimination. He has not done so. Courts have noted that a plaintiff alleging employment discrimination "faces a more difficult burden in establishing that a discriminatory animus played a role" in the adverse employment action when the decision makers are members of the same protected class as the plaintiff. Holston v. Sports Authority, Inc., 136 F. Supp. 2d 1319, 1335 (N.D. Ga. 2000) (citing cases). Plaintiff has not shown why a reasonable factfinder should believe that Singley and Hickman, who are white, trumped up insubordination and unruly behavior as cover for their discrimination against him because he is white. Boiled down, Plaintiff's argument is that Stroud and Evans lied to Singley and Hickman about what happened and that the supervisors should not have believed them. Even if Stroud's and Evans's accounts of Plaintiff's behavior were, in fact, incorrect, there is no reason to think that Singley and Hickman accepted their

13

statements because the supervisors wished to discriminate against Plaintiff. See Nix v. WLCY Radio/Rahall Comms., 738 F.2d 1181, 1187 (11th Cir. 1984). Considering also that Plaintiff admits to speaking to Singley in what can only be seen as a disrespectful manner, no reasonable factfinder would think that the explanation for why Plaintiff was fired was a mask for unlawful discrimination.[8] The motion for summary judgment is granted on the discrimination claim.

### C.  Retaliation Claim

Finally, the Court grants the motion for summary judgment with regard to the retaliation claim. There is no direct evidence of retaliation, so this claim must also be analyzed using the McDonnell Douglas framework. See Adams v. Cobb Cnty. Sch. Dist., 242 F. App'x 616, 620 (11th Cir. 2007). Although Plaintiff is able to show a *prima facie* case of Title VII retaliation, he does not demonstrate that Defendants' explanations for the adverse employment decisions they made with regard to him were pretexts for retaliation.

To prove a Title VII retaliation claim a plaintiff must show that (1) he engaged in an activity protected by Title VII; (2) he suffered a materially adverse

---

[8] The Court does not believe that the dismissal of Robert Bryant serves as evidence of discriminatory animus toward white employees. Jim Hickman fired Bryant, a white truck driver, for saying he would continue wearing his headset while driving after Hickman told him to stop. The fact that Singley permitted black drivers to wear their headsets does not indicate anything more than that he is more lenient than Hickman and the black drivers did not talk back to a supervisor. (Affidavit of E. R. Williams, Doc. 33-19, ¶¶7-9). There is no evidence that a black driver behaved exactly as Bryant did, with no repercussions, or that Singley prevented white drivers from using headsets.

14

action; and (3) the two events were causally connected. Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012). With regard to the first element, "protected activity" refers to an employee having "opposed any practice made an unlawful employment practice" by Title VII or having "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a); see also Gate Gourmet, 683 F.3d at 1257-58. Even if an employer did not actually violate Title VII, a plaintiff need only have "a good faith, reasonable belief" that it had. Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997). The Court will assume that Plaintiff engaged in a statutorily-protected activity on the three occasions when he complained to his supervisors after Stroud called him a "cracker" and when he threatened to contact the EEOC after his altercation with Stroud.[9]

Plaintiff has also provided evidence he suffered an adverse employment action. Obviously his termination was such an action, but so was the decision to reduce Plaintiff's work schedule. Knowing one's work hours would be cut "well might have dissuaded a reasonable worker from" participating in an activity

---

[9] Plaintiff also claims that he engaged in protected activity by complaining "that his working conditions were improper, unfair, unsafe, and unlawful." (Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 3). Because Plaintiff has not provided evidence for how or when these complaints occurred or what they related to, there is no basis for this Court to believe that Title VII protected Plaintiff in making the complaints.

protected by Title VII. Thompson v. N. Amer. Stainless, LP, 562 U.S. 170, ___, 131 S.Ct. 863, 868, 178 L.Ed.2d 694 (2011) (quoting Burlington N. & S.F.R. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)).

However, Plaintiff is able to draw a causal connection between only some of his protected activities and these adverse employment actions. The only evidence Plaintiff has offered for a causal link between his complaints and the reduction in his hours and termination consists of temporal proximity. If evidence for causation rests on nothing more than temporal proximity, the proximity must be "very close," with the passage of three months or more between an employee's protected activity and some adverse action being too great to allow for an inference of causation. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). Plaintiff's complaints about being called a "cracker" occurred in the middle of 2011, early in 2012, and following the altercation with Stroud in July 2012. The reduction in Plaintiff's hours did not occur until just before the altercation, so there is no evidence tying this adverse decision to some protected activity. Plaintiff's complaints about his fight with Stroud, including the "cracker" reference and Plaintiff's threat to contact the EEOC, did occur closely enough to his termination to allow for an inference of retaliation. Thus, there is a *prima facie* case for retaliation.

Nevertheless, as with the discrimination claim, Plaintiff has not rebutted Defendants' explanations for why he was fired. Defendants have provided evidence that Plaintiff was insubordinate on July 5, 2012, and that they had reasons to believe he had started the fight with Stroud. In refutation the only evidence Plaintiff can muster is the temporal proximity between his termination and his complaints. This is clearly insufficient to create a question of fact for whether Lanco fired him for engaging in protected activities. Summary judgment is granted on the retaliation claim.

### IV. Conclusion

In light of the above, Defendants' Motion for Summary Judgment (Doc. 21) is granted, and this case is dismissed with prejudice.

**SO ORDERED**, this the 29th day of January, 2015.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

scr